J-S16030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

R.M.

        Appellant

        v.

P.M.

        Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 3007 EDA 2015

Appeal from the Order Entered September 14, 2015
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 61-2012-DR

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                 **FILED MARCH 17, 2016**

R.M. ("Father") appeals *pro se* from the order entered on September 15, 2015, in the Court of Common Pleas of Wayne County, denying his exceptions to the custody master's report filed on July 14, 2015, with respect to his children, C.M., a female, born in October of 2006, and C.M., a male, born in October of 2008 (collectively, "the Children").  The master's report recommended that the court deny Father's petition for modification of the existing custody order, which granted Father supervised visitation,[1] at his financial expense.  We vacate and remand.

_____

[1] We observe that the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340, does not use the term "visitation" to describe periods of partial physical custody, shared physical custody, or supervised physical custody.  ***See*** 23

*(Footnote Continued Next Page)*

The certified record reveals an extensive procedural history of the underlying custody matter initiated by Father in February of 2012, when he requested primary physical and shared legal custody of the Children. Father's custody action proceeded to a custody conference on February 8, 2012, before Warren Schloesser, Esquire, who served as the custody master throughout this case. The parties entered into an interim agreement during the custody conference granting P.M. ("Mother") primary physical custody and Father supervised physical custody "[u]p to two, two hour sessions" per week, at the office of Wayne County Children and Youth Services ("WCCYS"), with Father to pay the costs.[2] Interim Agreement, 2/8/12, at 2. We summarize the remaining relevant history as follows.

By agreed-upon order dated April 20, 2012, the court directed that a Wayne County Sheriff's Deputy be present in the visitation room at WCCYS, along with the WCCYS aide supervising the visits, at Father's financial expense. Agreement, 4/20/12, at ¶¶ 1-2. On May 11, 2012, the parties agreed, *inter alia*, that the WCCYS aide was no longer obligated to supervise the visits; rather, Dr. [Michael] Stefanov would supervise the visits at

*(Footnote Continued)* ————————

Pa.C.S.A. § 5322(b). Herein, we refer to Father's custody award as supervised physical custody.

[2] The certified record reveals, by the time of this custody conference, a Protection from Abuse ("PFA") order was entered against Father on behalf of Mother and the Children for a period of three years.

WCCYS. Stipulation and Order, 5/11/12, at ¶ 1. On June 13, 2012, the parties agreed that Father will begin individual counseling with Dr. Stefanov, and that they will begin family counseling with Dr. John Seasock. Second Interim Agreement, 6/13/12, at 7. In addition, Father and Mother agreed to follow the custody recommendations made by Dr. Seasock. *Id.* at 7, 11-12.

On September 7, 2012, Father filed *pro se* a petition for contempt against Mother, alleging that Mother failed to participate in the counseling with Dr. Seasock. A hearing occurred before the trial court on October 11, 2012. By order the same date, the court dismissed Father's petition for contempt.

In addition, on September 7, 2012, Father filed *pro se* a petition for custody wherein he requested shared physical custody. Following an evidentiary hearing, by report and recommendation dated November 8, 2012, the master maintained Father's supervised physical custody for two, two-hour sessions per week at WCCYS. Master's Report and Recommendation, 11/8/12, at ¶¶ 1-3. Further, the master directed that Father undergo a psychological evaluation by Dr. Stefanov within 90 days, at Father's expense.[3] *Id.* at ¶ 5. Father filed *pro se* exceptions to the master's

---

[3] The record includes a confidential psychological evaluation by Dr. Stefanov dated January 14, 2013, wherein he opined that no evidence exists indicating that Father suffers from any psychological or anger-related disorder. *See* Psychological Evaluation, 1/14/13, at 5. In the evaluation, Dr. Stefanov stated that he did not observe Father with the Children. *Id.*

report, which the trial court denied by order dated December 17, 2012. Thereafter, the custody litigation continued, as follows.[4]

By order dated June 18, 2013, the trial court adopted the master's report and recommendation filed on May 28, 2013, that Father have visitation one hour per week, to be supervised for a 90-day period by "Douglas Bill or a similar clinically experienced male supervisor." Master's Report and Recommendation, 5/28/13, at ¶¶ 1, 3. The order provided that the male supervisor issue a report after 75 days, and that a hearing be subsequently scheduled.[5] *Id.* at ¶¶ 4-5.

On September 19, 2013, Father filed a motion for a hearing before the custody master to "allow [him] to have eight [ ] hours a week of

_____

[4] Relevant to Father's issues on appeal is the indicated finding by WCCYS in December of 2012, concerning Mother's allegation that Father sexually abused his daughter, C.M. Father filed an appeal to the Pennsylvania Department of Public Welfare ("DPW"), Bureau of Hearing and Appeals ("Bureau"), to expunge the indicated report of child abuse. By order dated January 16, 2014, the Bureau directed that DPW expunge the indicated report from the ChildLine Registry. *See* Order, 1/16/2014.

[5] In the May 28, 2013 report, the master stated that a hearing was held on May 14, 2013. The master stated that, prior to the commencement of the hearing, Father had agreed to supervised physical custody by "Douglas Bill or some other male clinician who would then be able to submit a report of his observations." Master's Report and Recommendation, 5/28/13, at 1-2 (unpaginated). In addition, the parties had agreed that the supervised physical custody would occur "outside of the [WCCYS] office." *Id.* at 1 (unpaginated). Notably, the record includes a letter from Douglas Bill to the custody master dated September 6, 2013, wherein he stated that Father attended four sessions of supervised physical custody. Father then "chose to suspend the visits and return to your [c]ourt to seek a decision." Letter, 9/6/13, at 1.

unsupervised visits" with the Children. Motion, 9/19/13, at ¶ 4. On January 24, 2014, following a hearing, the master filed a report and recommendation that Father's supervised physical custody be held at the office of Dr. Stefanov for one hour per week for eight sessions, and that a subsequent hearing be held with respect to Dr. Stefanov's observations of Father's custodial periods. Master's Report and Recommendation, 1/24/14, at ¶¶ 2-3. By order dated April 1, 2014, following exceptions filed by Mother, the trial court adopted the master's report.

On July 3, 2014, Father filed *pro se* a petition for modification of the existing custody order dated April 1, 2014, wherein he requested, *inter alia*, three overnights of physical custody per week. Following a hearing, the custody master, by report and recommendation filed on August 5, 2014, maintained the April 1, 2014 custody order. Father filed exceptions, and the trial court scheduled an oral argument. By order dated October 16, 2014, the trial court denied Father's exceptions. On November 19, 2014, the trial court adopted the master's August 5, 2014 report and recommendation.

This appeal arises from the petition for modification of the existing custody order filed by Father *pro se* on May 18, 2015, wherein he again requested shared custody. The master held a hearing on June 30, 2015. By report and recommendation filed on July 14, 2015, the master maintained the existing custody order. On July 27, 2015, Father filed exceptions *pro se*. The trial court held oral argument on September 2, 2015.

By order dated September 14, 2015, and entered on September 15, 2015, the trial court denied Father's exceptions and adopted the master's July 14, 2015 report and recommendation. Father timely filed *pro se* a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued a Rule 1925(a) opinion on October 29, 2015.

Father presents the following issues for our review:

1. Why is the Wayne County court system doing this to me?

2. Why is [Mother] doing this to me?

3. Why if I am innocent, proven innocent and cleared[] am [I] being persecuted, punished and extorted?

4. Why take a good father away from two young children who need him so very much[] if the dad is innocent?

5. Why is [the trial court] manipulating, skewing, dishonest and ste[a]ling children from innocent parent – me?

6. Why can't I have my kids back in my life in the form of a shared legal [and] physical custody order?

Father's brief at 13.

As best as we can discern, Father argues on appeal that the evidence is insufficient to support the subject custody order due to (1) the written report by Dr. Stefanov dated January 14, 2013; and (2) the indicated report of child sexual abuse being expunged from the ChildLine Registry pursuant to the Bureau's January 16, 2014 order. **See** Father's brief at 17.

The scope and standard of review in custody matters is as follows.

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's

- 7 -

physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004).

Relevant to this custody case are the factors set forth in Section 5328(a) of the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340, which provides:

**§ 5328.  Factors to consider when awarding custody.**

   **(a)  *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

   (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

   (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

   (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

   (3) The parental duties performed by each party on behalf of the child.

   (4) The need for stability and continuity in the child's education, family life and community life.

   (5) The availability of extended family.

   (6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[6]

_____

[6] The Act was amended, effective January 1, 2014, to include the additional factor at 23 Pa.C.S. § 5328(a)(2.1).

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Further,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V.**, 87 A.3d at 822-823.

Upon review of the certified record before this Court, the trial court failed to apply the Section 5328(a) custody factors when entering the subject order. Likewise, the court failed to enumerate the Section 5328(a) factors in its Rule 1925(a) opinion. As such, we do not know what facts the trial court considered when reaching its custody decision. Without factual findings, we cannot conduct a meaningful appellate review of Father's asserted errors. **See** 23 Pa.C.S.A. § 5323(d); **A.V., supra** at 823.

Likewise, to the extent the court relied upon the master's consideration of the Section 5328(a) custody factors in its July 14, 2015 report and recommendations, we conclude that the master cursorily considered them and failed to discuss findings of fact in support of these legal conclusions. The master stated as follows, in part:

> [T]he undersigned is seriously concerned about the materials posted on [Father]'s Facebook page, and what those postings indicate about his character and thought process. This questionable judgment touches on the consideration set forth in 23 Pa.C.S.[A.] [§] 5328(a)(15) which includes the mental condition of the party. Based upon his June 30, 2015 testimony, the mental condition of [Father] is a cause for concern.
>
> However, the statute requires that all of those considerations be dealt with and [Father] in his testimony, raised many of them for consideration. I find that the mother is better able to provide adequate physical safeguards and supervision of these two children; that the mother is better able to provide for stability and continuity in the children's education, family life and community life; that the mother is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for their emotional needs; that the mother is more likely to attend to the daily physical, emotional, developmental, educations and special needs of the children; that the mother has greater availability to care for the children; and most particularly, that the level of conflict between the parties is such that cooperation between them with respect to the children's well-being at this time is not possible.
>
> Admittedly in the context of this case, it is difficult to consider the other factors for various reasons, such as the still young age of the children gives limited weight to their preference, and since the father refuses to avail himself of supervised visitation, it is difficult to assess his ability to care for the children-testimony a custody supervisor could provide.

Master's Report and Recommendation, 7/14/15, at 3-4 (unpaginated).

- 11 -

Based on the foregoing, we conclude that neither the trial court's September 15, 2015 order, nor its Rule 1925(a) opinion, "delineate[s] the reasons for its [custody] decisions[.]"  23 Pa.C.S.A. § 5323(d).  The trial court also failed to state this reasoning in open court following the conclusion of the trial testimony.  As such, we conclude the trial court erred.[7]

Order vacated.  Case remanded for further proceedings.  Jurisdiction relinquished.

_____

[7] Notably, in the July 14, 2015 report and recommendations, the master stated that Mother testified and introduced documentary evidence during the hearing on June 30, 2015, which is not included in the transcript certified before this Court.  Master's Report and Recommendation, 7/14/15, at 2 (unpaginated).  In addition, the master stated that Father testified he is employed, and he received written communication from the Children, which is not included in the transcript.  *Id.*  Rather, the June 30, 2015 transcript in the certified record includes only Father's testimony on direct examination regarding his visit to the Children's school and a statement made by Father after the hearing but while still on the record.  *Id.* at 3-4.

"It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 240 (Pa. Super. 1996) (citation omitted); *Kessler v. Broder*, 851 A.2d 944, 950 (Pa. Super. 2004).  Where an appellant fails to fulfill his obligation, "the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal." Pa.R.A.P. 1911(d); 42 Pa.C.S.A. § 706.  Based on our conclusion that the trial court erred in failing to consider the Section 5328(a) custody factors, we do not dismiss this appeal.  Rather, we caution Father that, had the court set forth its mandatory assessment of the factors, we would have been unable to conduct a proper review of Father's issues without complete transcripts of the relevant hearings in the certified record.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2016